C. H. Bancroft, as Receiver of City National Bank in Miami, v. Gables Racing Association, Inc., *et al.*

157 So. 500.
Opinion Filed October 6, 1934.
Rehearing Denied November 28, 1934.

*Carl T. Hoffman,* and *Pierce & Enwall,* for Appellant; *Philip Clarkson,* for Appellees.

Buford, J.—The appeal in this case is from a final decree ordering the disbursement of a fund which was the subject of a suit in interpleader.

In September, 1931, Gables Racing Association, Inc., engaged Langford Holding Company, a corporation which appeared to also transact business in the name of George W. Langford Company, a corporation, as its general contractor to construct a racing plant on certain lands in Dade

County on a cost plus 10% basis. All sub-contracts were to be entered into by Langford Holding Company but were first to be submitted to Gables Racing Association Inc., for its approval. Construction began immediately. The principal contractor entered into contracts with several sub-contractors among whom was E. E. Baker, Inc., a corporation. This sub-contractor was employed to perform certain plastering, lathing and stone work, but without a written contract. The cost estimate made by the sub-contractor was submitted by Langford Holding Company to Gables Racing Association, Inc., and it was agreed that sub-contractor should do that work.

When Langford Holding Company received estimates of the construction expenses incurred, or to be incurred, by sub-contractors verbal requisitions were made on Gables Racing Association, Inc., for the necessary monies and when such monies were received they were immediately paid out on account of materials or pay-rolls of sub-contractor, it being the understanding between the main contracting parties that no sum would be retained by Langford Holding Company for its compensation until final settlement on the completion of the work. Prior to the completion of the work, on December 26, 1931, over $350,000.00 had been paid to Langford Holding Company by Gables Racing Association, Inc., under general contract, and Langford Holding Company had in turn paid over sums of money to the sub-contractor on account of its payrolls and for materials purchased and supplied. On completion of the construction Gables Racing Association, Inc., was indebted to Langford Holding Company in approximately the sum of $64,000.00. Langford Holding Company was indebted to its sub-contractor, E. E. Baker, Inc., in the sum of $3709.98. The sub-contractor had been furnished with materials and labor

by the appellees, Consolidated Supply Company, John B. Orr, Inc., and Edgar F. Sutton, with the knowledge of Langford Holding Company but Langford Holding Company was not advised as to the exact amount of money due to each of these creditors. And so it was that on the completion of the construction, E. E. Baker, Inc., was indebted to the Consolidated Supply Company in the sum of $3700.48, to John B. Orr, Inc., in the sum of $1350.00 and to Edgar F. Sutton in the sum of $873.00. Langford Holding Company nor George W. Langford Company was indebted to either of the material men directly and it appears had no information as to the indebtedness of the sub-contractor to such material men except as to Consolidated Supply Company.

As above stated, the total indebtedness due from Langford Holding Company or George W. Langford Company, to E. E. Baker, Inc., was $3790.98.

On January 22, 1932, E. E. Baker, Inc., by its bookkeeper, delivered to George W. Langford, President of the Langford Holding Company, in his office an envelop containing four documents dated January 7, 1932, which documents appear in the record in the following form:

"LANGFORD HOLDING CO.      Exhibit 1.

E. E. Baker, President           C. S. Baker, Vice-Pres.
E. E. Baker, Inc., Contractor
Plastering and Decorating
Plain and Ornamental

Phone 25453                              P. O. Box 999
2236 N. W. Miami Court
Miami, Fla., Jan. 7, 1932.

"Geo. W. Langford Co.,
  "City.
"Gentlemen:

  "Kindly pay to the order of Consolidated Supply Co. the sum of ONE THOUSAND FIVE HUNDRED SIXTY-NINE and 18/100 ($1569.18) DOLLARS and charge to our account of Plastering Work on Tropical Park Race Track.

                        "Very truly yours,
                              "E. E. BAKER, INC.
                                "By E. E. BAKER,
                                  "(Corp. Seal)"


"LANGFORD HOLDING CO.      Exhibit 2

E. E. Baker, President         C. S. Baker, Vice-Pres.
E. E. Baker, Inc., Contractor
Plastering and Decorating
Plain and Ornamental

Phone 25453                              P. O. Box 999
2236 N. W. Miami Court
Miami, Fla., Jan. 7, 1932.

"Geo. W. Langford Co.,
  "City.
"Gentlemen:

  "Kindly pay to the order of John B. Off, Inc., the sum of ONE THOUSAND THREE HUNDRED FIFTY (1350.00) and

charge to our account of Plastering Work on Tropical Park Race Track.

"Very truly yours,

"E. E. BAKER, INC.,
"By E. E. BAKER,
"(Corp Seal)."

"LANGFORD HOLDING CO.        Exhibit 3

E. E. Baker, President        C. S. Baker, Vice-Pres.

E. E. Baker, Inc., Contractor

Plastering and Decorating
Plain and Ornamental

Phone 25453                    P. O. Box 999
2236 N. W. Miami Court

Miami, Fla., Jan. 7, 1932.

"Geo. W. Langford Co.,
"City.

"Gentlemen:

"Kindly pay to the order of Edgar F. Sutton the sum of EIGHT HUNDRED SEVENTY-THREE ($873.00) DOLLARS and charge to our account of Plastering Work on Tropical Park Race Track.

"Very truly yours,

"E. E. BAKER, INC.,
"By E. E. BAKER,
"(Corp Seal)."

"Langford Holding Co. ·        Exhibit 4

E. E. Baker, President        C. S. Baker, Vice-Pres.

E. E. Baker, Inc., Contractor

Plastering and Decorating
Plain and Ornamental

Phone 25453                                    P. O. Box 999
2236 N. W. Miami Court

Miami, Fla., Jan. 7, 1932.

"*To Whom It May Concern*:

*Tropical Park.*

"This is to certify that we have received payment in full for labor and material furnished on account of Lathing, Plastering, Cast Stone and Quarry Key Stone on Tropical Park Club House, Administration Building and Paddock and Grand Stand, and therefore, waive all lien rights on same.

"E. E. Baker, Inc.,

"By E. E. Baker,
"(Corp Seal)."

(The following appears in pencil:)
" 873.00  Sutton
"1350.00  Orr
"1569.18  Graves

---

"3792.18"

The first three documents above quoted appear to be carbon copies of the originals.

It will be observed that the notation on the bottom of the last above quoted document shows the total of three orders to be $3792.18, which was $1.10 more than what

appeared to be due the sub-contractor from the principal contract.

It also appears from the record that the originals of these first three documents were delivered to the respective payees therein named. A stipulation appearing in the record includes the following:

"That notwithstanding the various so-called assignments, first writ of garnishment and material men's notices are all addressed to George W. Langford Company instead of to the Langford Holding Company, no point is made by anybody to this suit with respect to that difference, it appearing that George W. Langford is an officer in both companies and the stockholders and directors are the same."

On the day after the above mentioned documents were delivered to the main contractor a suit was instituted in the United States District Court for the Southern District of Florida by Spurway as Receiver of City National Bank in Miami against E. E. Baker, Inc., and E. E. Baker, individually, to enforce the payment of a certain promissory note. At the same time a writ of garnishment issued on behalf of plaintiff and was that day served on George W. Langford Company to impound any monies that might be then due from George W. Langford Company to E. E. Baker, Inc. Subsequently, another writ of garnishment was issued and served on Langford Holding Company for the same purpose.

Shortly after the service of the writs of garnishment the material-man above mentioned served cautionary notices on George W. Langford Company (Langford Holding Co.) and Gables Racing Association, Inc., for the purpose of fixing a lien on the property of Gables Racing Association, Inc., for the amount of their respective claims. Langford Holding Company then caused a special bank account des-

ignated as Bruce L. Howard, Trustee, to be set up in Florida National Bank of Miami, Florida, for the purpose of keeping separate the *pro rata* sums due by Langford Holding Company to E. E. Baker, Inc., pending the determination of its proper disbursement. After conferences, it was decided between Gables Racing Association, Inc., Langford Holding Company and the material-men that suit in interpleader should be instituted for the purpose of determining to whom the fund originally due to E. E. Baker, Inc., should be paid. Accordingly Bruce Howard obtained a Cashier's Check from Florida National Bank & Trust Co. at Miami which he delivered to his attorney, or the attorney for Gables Racing Association, Inc., which was by him deposited in the Circuit Court, upon the institution of suit by bill of interpleader on December 8, 1932.

On final hearing, the decree was in favor of Consolidated Supply Company, John B. Orr, Inc., and Edgar F. Sutton, from which decree this appeal was taken.

Now the only question involved here is whether or not the orders, drafts, or whatever they may be called, which were delivered by E. E. Baker, Inc., to the three creditors hereinabove referred to, together with copies thereof which with the receipt in full delivered by E. E. Baker, Inc., to Langford Holding Company constituted an assignment of the indebtedness due from Langford Holding Company to the drawer of the three orders, checks or drafts, to the payees therein, and whether or not such assignment took priority over the lien attempted to be acquired by writ of garnishment served on Langford Holding Company and George W. Langford Company after delivery of such orders to the payees named therein and after notice to the drawee named therein together with delivery to the drawer of a receipt in full of all sums due the sub-contractor from

the main contractor for the performance of specific work designated in each of the said orders.

It will be observed that the orders constitute an order on a specific fund and that the three orders taken together completely exhausted that fund.

We think the orders must be considered together because they were issued contemporaneously and notice of their issuance and existence was delivered by the drawer to the drawee at one and the same time and the receipt delivered therewith shows upon its face, as well as by testimony in the case, that it was the intention of E. E. Baker, Inc., to transfer and assign the entire fund due him from Langford Holding Company or George W. Langford Company *pro tanto* to the three creditors named in the orders. See 6 R. C. L. 850, Sec. 240 and cases there cited.

This transaction and conduct constituted a valid assignment of the fund and that assignment went into force and effect prior to the acquisition of lien by the plaintiffs in garnishment.

It appears to be well settled that a draft for the whole of a particular specified fund or debt amounts to an assignment of such debt or fund, even without acceptance, if the drawee have notice thereof. Lewis v. Traders Bank (Lewis v. Lawrence) 30 Minn. 134, 14 N. W. 577, and cases there cited.

A case much in point is that of E. L. Wilson Hardware Co. v. Duff, *et al.,* 54 Ext. Civ., App. 285, wherein it is said.

"A railway company settled a suit by the debtor and authorized his attorney to draw for the amount, which he did on April 12, 1903, and received the amount on April 14, the draft being paid by the company on April 13. On April 4, 1903, the plaintiff sued the debtor and sued out

a writ of garnishment against the company which was served on its local agent on the same day, but the treasurer had paid the draft before he or any officer had notice of service of the writ on the local agent, the latter having failed to notify them. On April 10, the debtor in payment of the debts drew an order in favor of the Hardware Company and an order in favor of another creditor on his said attorney, both to be paid when the latter received the money from the railway company, the latter order being assigned to the Hardware Company and both orders were presented to the Attorney on April 16, and left with him. On April 15, the plaintiff in garnishment sued out a writ of garnishment against the attorney, and it was served on the same day after he had received the orders. Held, that the money paid by the railroad company to the attorney was the money of the debtor, whose right to it was not affected by the writ sued out against and served on the railway company, that is, no lien extended to the money in the hands of the attorney after it had been paid, and the execution and delivery of the two orders prior to the service of the writ of garnishment on the attorney being an absolute assignment and transfer of the debtor's interest in the fund in the attorney's hands, the Hardware Company was entitled to the money so assigned it as against the plaintiff in garnishment."

The principles enunciated are supported in Robbins v. Bacon, 3 Greenl. (3 Me.) 346; Kingman v. Perkins, 105 Mass. 111; Anderson *et al.* DeSoer, 6 Gratt (47 Va.) 363; Centerbury & Gilder, v. Marengo Abstract Co., 166 Ala. 231, 52 Sou. 388, 139 Am. St. Rep. 30; Nesmith v. Drum, 8 Watts & Sergents Rep. (Pa.) 9, 42 Am. Dec. 260, and in Connoley v. Cheesborough, 21 Ala. (N. S.) 166.

Having reached the conclusion that the controlling ques-

tion must be determined in favor of the appellees, the decree should be affirmed and it is so ordered.

Affirmed.

DAVIS, C. J., and WHITFIELD, and TERRELL, J. J., concur.